IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| VANCE KNUTSON,<br><br>        **Plaintiff,**<br><br>vs.<br><br>AIR-LAND TRANSPORT SERVICE,<br>INC.,<br><br>        **Defendant.** | No. C15-2076<br><br>**RULING ON MOTION FOR<br>SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.*    *The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.*    *Knutson's Employment History with Air-Land* . . . . . . . . . . . . . . . 4
    *C.*    *Knutson's Request for Accommodation* . . . . . . . . . . . . . . . . . . 6
    *D.*    *Social Security Disability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . 7

V. *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.*    *Intentional Disability Discrimination Under the ADA and ICRA* . . . . 8
        *1.*    *Analytical Framework Under the ADA* . . . . . . . . . . . . . . . 8
        *2.*    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            *a.*    *Is Knutson a "Qualified Individual" as Defined by the*
                *ADA?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            *b.*    *Air-Land's Legitimate Non-Discriminatory Reason* . . . 16
            *c.*    *Pretext* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    *B.*    *ADA Claim for Failure to Accommodate* . . . . . . . . . . . . . . . . . 20
        *1.*    *Analytical Framework Under the ADA* . . . . . . . . . . . . . . . 21
        *2.*    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    **C.**    *FMLA Violations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        *1.*    *Is Knutson Eligible for FMLA Benefits* . . . . . . . . . . . . . . 26

        *2.*    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

               *a.*    *Overview of FMLA* . . . . . . . . . . . . . . . . . . . . . . . . 26

               *b.*    *Entitlement Claim for Interference of FMLA Rights* . . 27

               *c.*    *FMLA Discrimination Claim* . . . . . . . . . . . . . . . . . 27

        *3.*    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

               *a.*    *Entitlement Claim for Interference* . . . . . . . . . . . . 28

               *b.*    *Discrimination Claim* . . . . . . . . . . . . . . . . . . . . . . 29

**VI.**   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**VII.**  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 26) filed by Defendant on May 27, 2016; the Resistance (docket number 34) filed by Plaintiff on June 20, 2016; and the Reply (docket number 39) filed by Defendant on June 28, 2016. Defendant's request for oral argument is denied. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On March 24, 2016, Plaintiff Vance Knutson filed an Amended Complaint in federal court.[1] In the Amended Complaint, Knutson alleges violations of the Americans with Disabilities Act ("ADA"), violations of the Iowa Civil Rights Act ("ICRA"), and violations of the Family Medical Leave Act ("FMLA"). On April 7, 2016, Defendant Air-Land Transport Service, Inc. ("Air-Land"), filed an Answer and Affirmative Defenses to Knutson's Amended Complaint, generally denying the material allegations contained in

---

[1] Initially, on July 16, 2015, Knutson filed a Petition at Law and Demand for Jury Trial in the Iowa District Court for Black Hawk County (Case No. CVCV127728). Defendant filed a Notice of Removal (docket number 2) on August 11, 2015, transferring the case from the Iowa District Court to the United States District Court for the Northern District of Iowa.

the petition, and asserting certain affirmative defenses. On September 9, 2015, both parties consented to proceed before a United States Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c). Trial is scheduled before the undersigned on October 24, 2016.

Air-Land timely filed the instant motion for summary judgment on May 27, 2016.

## III. RELEVANT FACTS

### A. The Parties

Defendant Air-Land Transport Service, Inc., is a transportation company with its principal place of business in Morton, Illinois. Air-Land also has satellite terminals in East Moline, Illinois, and Seguin, Texas. Additionally, Air-Land rents parking facilities for trucks in Dubuque, Cedar Falls, and Cedar Rapids. Air-Land employs truck drivers in Morton, East Moline, Seguin, and Dubuque, Des Moines, Cedar Falls, and Cedar Rapids, Iowa. Approximately 70 employees work out of the Morton office (45-50 drivers and 20 administrative employees). The parking facilities in Dubuque, Cedar Falls, and Cedar Rapids generally employ 1-2 drivers.

Plaintiff Vance Knutson worked for Air-Land as a truck driver. He was hired on June 19, 2012. He was terminated from employment on December 8, 2014. According to Knutson, he "worked out of the Moline, Illinois main terminal and home office."[2] His driving routes were primarily between Cedar Falls and Des Moines or Cedar Falls and the

---

[2] Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 1; ¶ 4. Air-Land disputes Knutson's claim that he worked out of the Moline office. Air-Land asserts Knutson worked and operated out of Cedar Falls, Iowa. *See* Air-Land's Response to Plaintiff's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 39-1) at 2; ¶ 4. In support of its assertion, Air-Land directs the Court to three instances in Knutson's deposition where he states that Cedar Falls was his work location. *See* Air-Land's Supplemental Appendix (docket number 39-2) at 204 (Knutson testified "Air-Land rented their trucks from Ryder's in Cedar Falls . . . so basically that was the home base for the drivers in the Cedar Falls/Waterloo area[.]"); 205 (providing testimony from Knutson that he and 2-3 other drivers for Air-Land worked out of the Ryder location in Cedar Falls); 206 (providing testimony from Knutson that he was a driver for Air-Land based out of Cedar Falls).

Quad-Cities. However, he "received all of his instructions and had all of his communications with dispatchers in Morton, Illinois."[3] Knutson would also occasionally attend meetings in both Air-Land's headquarters in Morton, and Air-Land's satellite terminal in East Moline.

## B. Knutson's Employment History with Air-Land

Because of his pre-employment physical and required health certification for truck driving, Air-Land was aware when it hired Knutson that he had a heart attack in 1998, and suffered from Type-II Diabetes. Upon hiring Knutson, Air-Land provided him with a copy of Air-Land's Employee Policy Handbook. In the employee handbook, truck drivers were put on notice that "[e]xcessive tardiness or absence may result in disciplinary action, up to and including discharge."[4]

Air-Land maintains an "Absence Detail" report which tracks an employee's non-excused absences. In the report, absences are categorized as "Unexcused" and "Illness-Self." In 2012 (Knutson was hired in June), Knutson had 8 unexcused or illness-self absences. In 2013, Knutson had 16 unexcused or illness-self absences. In December 2013, Knutson had a heart attack and underwent heart surgery. Air-Land approved Knutson for 12 weeks of FMLA or FMLA-like leave to recuperate from his heart surgery.[5]

---

[3] Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 1; ¶ 4. Air-Land does not dispute this assertion. *See* Air-Land's Response to Plaintiff's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 39-1) at 2; ¶ 4.

[4] Air-Land's Appendix (docket number 26-2) at 152.

[5] Knutson and Air-Land dispute whether Knutson was placed on FMLA leave or the equivalent of FMLA leave because the parties disagree as to whether Knutson was eligible for FMLA leave. The parties' dispute centers on their disagreement regarding whether Knutson worked out of Moline, Morton, or Cedar Falls. *See* Footnote 2; *see also* Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 2; ¶ 6 (providing Knutson was approved for "an FMLA leave" on December 9, 2013 through March 6, 2014). *Compare* Air-Land's Statement of Material Facts in Support of Its Motion for Summary Judgment (docket number 26-1) at 3; ¶¶ 17-20 (providing Air-Land approved Knutson for a medical leave of absence that was "FMLA-like"
(continued...)

On February 28, 2014, Knutson's cardiologist signed a medical release, allowing Knutson to return to work without any work restrictions.

On March 6, 2014, Knutson returned to work at his previous position as a truck driver. Shortly after returning to work Knutson entered into conversations with Kory Lawrence, Knutson's supervisor, regarding his belief that he may need an additional 12 weeks of FMLA leave in March 2015 to have a second heart surgery. Knutson had minor blockage in two arteries that were not repaired in his first heart surgery. Over the next ten months (March 2014-December 2014), Knutson was absent from work 26 times.

On August 26, 2014, Lawrence prepared a written disciplinary notice for Knutson regarding his attendance issues. Knutson did not sign the disciplinary notice, but Lawrence spoke with him about it, and indicated that Air-Land would more closely monitor Knutson's absences. On November 18, 2014, Lawrence prepared a second written warning for Knutson. Again, Knuston did not sign the warning, but Lawrence called him to discuss it. On December 5, 2014, Lawrence, again, spoke with Knutson regarding his absences. Lawrence informed Knutson that he had missed approximately 23 days of work over the past nine months, and if he missed any more days, his employment would be terminated. On December 8, 2014, Knutson was absent from work, and he was also scheduled to be absent from work on December 9. As a result, Air-Land terminated Knutson from employment on December 8 for his poor attendance record.

[5](...continued)
even though he was not eligible for FMLA leave due to working out of Cedar Falls which employed less than 50 employees within a 75-mile radius); 29 U.S.C. § 2611(2)(B)(ii) (FMLA definition of the term "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50."); *see also* Air-Land's Response to Plaintiff's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 39-1) at 3; ¶ 6 ("The Defendant qualifies the allegations of paragraph 6 of Plaintiff's Statement of Additional Material Facts. The Defendant provided Plaintiff with FMLA-like leave, as he was not an FMLA-eligible employee."). This dispute will be resolved in the body of this decision when the Court addresses Knutson's FMLA claims.

## C. Knutson's Request for Accommodation

In the fall of 2014, Knutson spoke with Lawrence regarding his heart condition and the number of hours he was required to work. Knutson informed Lawrence that his cardiologist believed he should work no more than 12 hours in one day. Lawrence told Knutson Air-Land would need a note from Knutson's doctor before considering such an accommodation. On December 3, 2014, Knutson provided Air-Land with a doctor's note indicating he should only work 11-12 hours per day. When Knutson presented the doctor's note to Air-Land, Lawrence told him Air-Land could not accommodate his request because Air-Land could not guarantee that he would be back from transport runs in under 12 hours. The parties agree that the length of time it takes to load and unload a truck varies, and depends on the actions of a third-party. Air-Land is not responsible for loading and unloading its trucks. In his deposition, Lawrence also pointed out Air-Land is "at the mercy of traffic, weather, live unloads, customers, shippers. I mean, we can't control how long a driver is stuck at a facility getting loaded or unloaded. . . . So we can't guarantee that a driver is only going to work up to 11 or 12 hours."[6]

## D. Social Security Disability

After he was terminated from employment at Air-Land, Knutson applied for social security disability benefits in June 2015. Even though Knutson claims "[i]f he had not been terminated from Air-Land, he would have been able to continue to drive as he felt physically well at that time, i.e., December 8, 2014," in his application for benefits, Knutson stated his heart condition became severe enough to keep him from working beginning on December 8, 2014.[7] In August 2015, the Social Security Administration

---

[6] Air-Land's Appendix (docket number 26-2) at 75; Lawrence's Deposition at 158:16-19, 25-159:1.

[7] Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 5; ¶ 19 (providing Knutson felt fine to continue driving on December 8, 2014). *Compare* Air-Land's Appendix (docket number 26-2) at 182 (Knutson's application
(continued...)

determined Knutson was disabled beginning on December 8, 2014, his alleged disability onset date.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship*

---

[7](...continued)
for disability benefits stating on December 8, 2014 his condition was severe enough to keep him from working).

*Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

In his Amended Complaint, Knutson alleges Air-Land discriminated against him for terminating him based on his disabilities, in violation of the ADA (Count I) and ICRA (Count II); discriminated against him by failing to accommodate his disability in violation of the ADA (Count III); and violated his rights under the FMLA by interfering with his use of his FMLA rights, and discriminating against him for both exercising his rights under the FMLA and expressing his intent to exercise his rights under the FMLA again in the future (Count IV).

### A. Intentional Disability Discrimination Under the ADA and ICRA

Knutson alleges disability discrimination under both the ADA and ICRA. When the parties in disability discrimination litigation "do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA." *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007) (citing *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005)); *see also Kallail v. Alliant Energy Corporate Services, Inc.*, 691 F.3d 925, 930 (8th Cir. 2012) ("[D]isability claims under the ICRA are generally analyzed in accord with the ADA"); *Schlitzer v. University of Iowa Hospitals & Clinics*, 641 N.W.2d 525, 529 (Iowa 2002) ("The common goals of the Federal ADA and our civil rights act have encouraged us to look to the federal statutory and regulatory standards in applying our statute."). Therefore, the Court will analyze both Knutson's ADA and ICRA disability discrimination claims using federal law.

### 1. Analytical Framework Under the ADA

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

8

privileges of employment." 42 U.S.C. § 12112(a) (2009).[8] *See also Gretillat*, 481 F.3d at 652. "As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (quoting 42 U.S.C. § 12111(8)); *see also Casey's General Stores, Inc. v. Blackford*, 661 N.W.2d 515, 519 (Iowa 2003) ("The [ICRA] prohibits an employer from discriminating against a qualified person with a disability because of the person's disability.").[9]

In the absence of direct evidence, the Court analyzes an ADA claim under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See also Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). Under the *McDonnell Douglas* framework, a discrimination plaintiff must first establish a *prima facie* case of discrimination. *Id.* If the employee establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. *Id.* If the employer articulates such a reason, the burden then returns to the employee to show the employer's justification is a pretext. *Id.*

---

[8] The ADA was amended by Congress through the enactment of the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. *See* Pub. L. No. 110-325, § 8, 122 Stat. 3553. The purpose of the amendment was to clarify what qualified as a disability. *Minnihan v. Mediacom Communications Corp.*, 779 F.3d 803, 810 n.3 (8th Cir. 2015). For purposes of Knutson's claims, the analysis remains the same under the ADA or ADAAA. *Id.*

[9] Under the post-amendment ADA, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013) ("Congress's 2008 amendments to the ADA did not fundamentally change the qualification requirement although they excised the term "with a disability" from the subsection defining a "qualified individual. . . ." To qualify under the post-amendment ADA, an individual must still be able to "perform the essential functions of the employment position" "with or without reasonable accommodation." 42 U.S.C. § 12111(8).").

A *prima facie* case of discrimination under the ADA requires a plaintiff to establish he or she: "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of [his or] her disability." *Walz v. Ameriprise Financial, Inc.*, 779 F.3d 842, 845 (8th Cir. 2015) (citation omitted). If a plaintiff "fails to establish any element of his prima facie case, summary judgment is proper." *Kellogg v. Union Pacific Railroad Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000) (citation omitted).

### 2. Discussion

The parties do not appear to dispute Knutson has a disability as defined by the ADA. Air-Land asserts, however, Knutson is not a "qualified individual" under the ADA. Specifically, Air-Land argues Knutson's poor attendance record and his admission to the Social Security Administration that he is unable to work because of his disability both preclude a finding that he is a "qualified individual" for purposes of the ADA. Alternatively, Air-Land maintains even if the Court determines Knutson is able to establish his *prima facie* case of disability discrimination, Air-Land's reasons for terminating Knutson's employment were legitimate and non-discriminatory. Air-Land further contends Knutson cannot demonstrate that his termination was pretext for disability discrimination.

### a. Is Knutson a "Qualified Individual" as Defined by the ADA?

A person is a "qualified individual" under the ADA if he or she "satisfies the requisite skill, experience, education, and other job-related requirements, and 'can perform the essential job functions, with or without reasonable accommodation.'" *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007) (quoting *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1016 (8th Cir. 2000)); *see also Heaser v. Toro Co.*, 247 F.3d 826, 830 (8th Cir. 2001) (In order to be a qualified individual under the ADA, a plaintiff must "(1) possess the requisite skill, education, experience, and training for [his or] her position; and (2) be able to perform the essential job functions, with or without reasonable accommodation."). Essential job functions are the fundamental job duties of

an employment position, but do not include the marginal functions of the position. *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006); *see also* 29 C.F.R. § 1630.2(n)(1) (providing the definition of essential functions). The types of evidence a court should consider in determining whether a function is essential includes:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs.

*Rehrs*, 486 F.3d at 356 (citing 29 C.F.R. § 1630.2(n)(3)); *Heaser*, 247 F.3d at 831.

Air-Land argues Knutson is unable to perform the essential functions of his job due to his poor attendance record. The Eighth Circuit Court of Appeals has "repeatedly held that 'regular and reliable attendance is a necessary element of most jobs.'" *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002) (quoting *Pickens v. Soo Line R.R. Co.*, 264 F.3d 773, 777 (8th Cir. 2001)). In *Spangler*, the plaintiff had a history of absenteeism, including 32 days in 1993, 17 days in 1994, 12 days in 1995, and 29 days in 1996. 278 F.3d at 849. The plaintiff continued her pattern of absences in 1997 and 1998. *Id.* She was placed on probation twice, and eventually terminated in 1998 for her excessive absenteeism. *Id.* The plaintiff, who suffers from depression, brought suit claiming she was terminated from employment in violation of the ADA. *Id.* at 848. The Eighth Circuit determined the plaintiff's ADA lawsuit failed because she was unable to show that she was able to perform the essential functions of her employment due to her poor attendance record. *Id.* at 850. The Eighth Circuit reasoned "'an employee who is unable to come to work on a regular basis is unable to satisfy any

of the functions of the job in question, much less essential ones.'" *Id.* (quoting *Pickens*, 264 F.3d at 777).

Here, Air-Land provided Knutson with a copy of the Air-Land Employee Policy Handbook. In the employee handbook, drivers were put on notice that "[e]xcessive tardiness or absence may result in disciplinary action, up to and including discharge."[10] Air-Land's attendance records show in 2012 (Knutson was hired in June 2012), Knutson had 8 unexcused or illness-self absences. In 2013, Knutson had 16 unexcused or illness-self absences. In December 2013, Knutson had a heart attack and underwent heart surgery. Air-Land approved 12 weeks of leave to allow Knutson to recuperate from his heart attack. Knutson returned to work on March 6, 2014. Over the next ten months (March 2014-December 2014), Knutson was absent from work 26 times. Knutson was given verbal warnings regarding his poor attendance record on August 26 and November 18, 2014.[11] On December 5, 2014, Knutson's supervisor, again, spoke with Knutson regarding his absences. Knutson was informed that he had missed approximately 23 days of work over the past nine months, and if he missed any more days, his employment would

---

[10] Air-Land's Appendix (docket number 26-2) at 152.

[11] Knutson denies receiving any verbal warnings in an affidavit he filed with his resistance to Air-Land's motion for summary judgment. *See* Knutson's Appendix (docket number 35) at 2-3; ¶ 8 (Knutson's Affidavit). Air-Land does little to address Knutson's claim that he was not verbally notified of the warnings. However, the evidence in the record shows the written warnings contained notations that the warnings were communicated over the phone because the employee was a Cedar Falls based driver. *See* Knutson's Appendix (docket number 35) at 52. The Chief Operating Officer and General Manager for Air-Land, Gary Christopher, testified at his deposition that it was Air-Land's practice to communicate written warnings by phone with drivers outside the company's primary terminals, such as Knutson who worked out of Cedar Falls. *See* Knutson's Appendix (docket number 35) at 52; Gary Christopher's Deposition at 19:7-14. Thus, the evidence in the record demonstrates that Air-Land documented Knutson's attendance issue in 2 written documents, and per company practice communicated the warnings by phone to Knutson. Other than his affidavit, Knutson offers no evidence to support his claim that Air-Land did not follow its normal practice and failed to notify him verbally of the warnings regarding his attendance. "'A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.'" *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (quoting *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010)).

be terminated. On December 8, 2014, Knutson was absent from work, and he was also scheduled to be absent from work on December 9. As a result, Air-Land terminated Knutson from employment on December 8 for having too many absences from work.

Similar to *Spangler*, Knutson had a history of absenteeism, was verbally warned about his excessive absenteeism, and was terminated from employment for continuing to be absent from work, despite multiple warnings. Accordingly, the Court determines Knutson is not a "qualified individual" under the ADA because, due to poor attendance record, he was unable to perform the essential functions of his job. *Spangler*, 278 F.3d at 850.

Air-Land also argues Knutson's admission to the Social Security Administration that he was unable to work beginning on December 8, 2014 (the date Knutson was terminated), due to being disabled precludes a finding that he was a "qualified individual." In *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), the United States Supreme Court addressed the issue of:

> an ADA plaintiff who both applied for, and received, SSDI [(Social Security Disability Insurance)] benefits. It requires us to review a Court of Appeals decision upholding the grant of summary judgment on the ground that an ADA plaintiff's "representation to the SSA that she was totally disabled" created a "rebuttable presumption" sufficient to "judicially estop" her later representation that, "for the time in question," with reasonable accommodation, she could perform the essential functions of her job. The Court of Appeals thought, in essence, that claims under both Acts would incorporate two directly conflicting propositions, namely, "I am too disabled to work" and "I am not too disabled to work." And in an effort to prevent two claims that would embody that kind of factual conflict, the court used a special judicial presumption, which it believed would ordinarily prevent a plaintiff like Cleveland from successfully asserting an ADA claim.

*Id.* at 802. The Supreme Court, however, determined "despite the appearance of conflict that arises from the language of the two statutes, the two claims do not inherently conflict

to the point where courts should apply a special negative presumption like the one applied by the Court of Appeals here." *Id*. Instead, the Supreme Court reasoned:

> a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case — at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

*Id*. at 806. Thus, the Supreme Court concluded:

> When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id*. at 807.

Here, Knutson applied for social security disability benefits in June 2015. In his application for benefits, Knutson stated he was disabled because his heart condition became severe enough to keep him from working beginning on December 8, 2014. In August 2015, the Social Security Administration determined Knutson was disabled as of his disability onset date, December 8, 2014. In his brief, Knutson provides the following explanation for the apparent inconsistency between his claim of total disability on December 8, 2014, and the necessary elements of his ADA claim:

> Vance Knutson was able to continue to work at Air-Land, as long as Air-Land would be willing to accommodate his disability by affording him occasional absences and more recently, limiting his work day to 12 hours per his cardiologist's letter. After [Knutson] was terminated by Air-

14

Land on December 8, 2014, and after he lost his health insurance coverage, [he] found himself in a position where he could not find another job. He later applied for Social Security disability, and it turned about [(sic)] that his ultimate date of disability coincided with his date of termination, when Air-Land was no longer willing to reasonably accommodate [his] disability.

Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 7.

The Court does not find Knutson's explanation sufficient for several reasons. First, Knutson never requested an accommodation for "occasional absences." Second, it is unreasonable to assert that missing approximately 26 days in a 9-month timeframe constitutes "occasional absences." Third, being granted an accommodation of a 12-hour workday does not address or explain the contradiction between claiming total disability and Knutson's claim that he could peform the essential functions of his job. Fourth, December 8, 2014 being the date of both his termination and his disability onset is not a coincidence. Knutson himself reported to the Social Security Administration that his disability onset date was December 8, 2014. He affirmatively stated he was not able to "function and/or work as of December 8, 2014."[12] Finally, Knutson offers no evidence from medical doctors or otherwise for his claim that had Air-Land accommodated his disability he would have been able to continue driving a truck on December 8, 2014. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) ("Evidence, not contentions, avoids summary judgment."). Based on the foregoing, the Court concludes Knutson has failed to provide a sufficient explanation. In other words, a reasonable juror would not conclude that even though Knutson applied for and received disability benefits beginning on December 8, 2014, that he could have nonetheless performed the essential functions of his

---

[12] Air-Land's Appendix (docket number 26-2) at 190.

job on December 8, 2014, with or without reasonable accommodation. *Cleveland*, 526 U.S. at 807.

In summary, the Court finds Knutson's poor attendance record combined with his successful application for social security disability benefits beginning on December 8, 2014, precludes a finding that he is a "qualified individual" for purposes of the ADA. Therefore, Knutson is not protected under the ADA or ICRA, and Defendants are entitled to summary judgment on Knutson's claims of disability discrimination. *See Peyton*, 561 F.3d at 902 ("As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'") (quotation omitted).

### b. *Air-Land's Legitimate Non-Discriminatory Reason*

Alternatively, the Court concludes Air-Land has stated a legitimate non-discriminatory reason for terminating Knutson. Had Knutson met his burden of establishing a *prima facie* case of disability discrimination, the burden would shift to Air-Land to articulate a legitimate non-discriminatory reason for terminating him. *Lors*, 595 F.3d at 834. Air-Land presents the following legitimate non-discriminatory reason for terminating Knutson: "Plaintiff missed 16 days of employment in 2013, and 26 days of employment in the nine months he worked in 2014."[13] Even if Knutson had established his *prima facie* case, the Court finds that Air-Land articulated a legitimate, non-discriminatory reason — poor attendance — for its decision to terminate Knutson. Accordingly, the burden would shift back to Knutson to present evidence that Air-Land's proffered reason was merely pretext for unlawful discrimination. *Id.*

---

[13] Air-Land's Brief in Support of Its Motion for Summary Judgment (docket number 27-1) at 14.

### c. *Pretext*

Knutson argues Air-Land's non-discriminatory reason for his termination — poor attendance — is pretext for disability discrimination. Knutson asserts his absences in 2012 (8 in six months) and 2013 (16 absences) were "on par" with his absences in 2014 (26 absences in approximately 9 months). Knutson maintains "[i]n spite of this, he was never subjected to any discipline in those earlier years."[14] Knutson points out that after he returned to work in March 2014, following 12 weeks of leave beginning in December 2013 to recuperate from a heart attack, Air-Land for the first time began raising the issue of his poor attendance. During this time period, Knutson also informed Air-Land that he may need another 12 weeks of leave in 2015 for further surgery to repair his heart. Later, in the fall of 2014, Knutson requested an accommodation to work no more than 12 hours in a single day. Air-Land asked for a doctor's note supporting the requested accommodation, and on December 3, 2014, Knutson presented Air-Land with such a note. On December 5, 2014, Air-Land informed Knutson such an accommodation was unavailable because Air-Land could not guarantee Knutson's truck delivery runs would last only 12 hours. At the same time, Air-Land also informed Knutson that he had missed approximately 23 days of work over the past nine months, and if he missed any more days, his employment would be terminated. On December 8, 2014, Knutson was absent from work, and he was also scheduled to be absent from work on December 9. As a result, Air-Land terminated Knutson from employment on December 8 for his poor attendance record. Knutson maintains these facts support a finding that his termination was pretext for disability discrimination. Specifically, Knutson asserts:

> With the lack of any prior disciplinary action, and with the rather hurried approach to termination between December 5 and December 8, a jury could reasonably conclude that the combination of [Knutson's] disability, FMLA leaves, past and

---

[14] Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 8.

> future, and his request for a 12 hour work day became more
> than [his supervisor] wanted to tolerate. However, none of
> these represent a legal or appropriate basis for [Air-Land] to
> terminate [Knutson].

Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 9. Knutson concludes "[t]here is some great inconsistency and lack of corroboration which underlies the position of Air-Land and its supervisory, Kory Lawrence, in this case. All of the evidence, taken together, generates a genuine issue of material fact regarding discrimination and pretext."[15]

In order to show pretext, Knutson "must show a genuine issue of material fact as to whether [Air-Land] actually fired him because of his disability." *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999)); *see also Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998) ("[Pretext] requires proof that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason."). Additionally, Knutson's "attempt to prove pretext 'requires more substantial evidence' than is required to make a prima facie case because evidence of pretext is viewed in light of [Air-Land's] justification." *Cody*, 763 F.3d at 997 (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)).

Viewing the record in light of Air-Land's justification for terminating Knutson — his poor attendance record in 2014 — the Court is unpersuaded Knutson is able to set forth a genuine issue of material fact that Air-Land terminated him because of his disability. First, contrary to Knutson's assertion that his absences in 2012 and 2013 were "on par" with his absences in 2014, the record demonstrates Knutson's combined absences in 2012 and 2013 (24 absences in 18 months), were less than his 26 absences in 9 months in 2014. Second, contrary to Knutson's contention that he was never disciplined for excessive

---

[15] Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 11.

absences in 2014, the record shows he was given written/verbal warnings regarding his attendance in August, November, and December 2014.[16] Third, Air-Land terminated Knutson for being absent from work on December 8, 2014, and stating he would be absent from work on December 9, three days after he was given his third verbal warning for missing approximately 23 days of work over a 9-month period. At his third verbal warning, Air-Land informed Knutson he would be terminated if he had any more absences. Fourth, Knutson never formally requested future FMLA leave. Knutson believed he may need FMLA leave in the future, but there is no medical evidence to suggest further heart surgery was required. Instead, Knutson's medical provider suggested if tests showed a worsening of symptoms, he may consider further heart surgery at that time.[17] Finally, as Air-Land points out in its brief, Knutson offers no evidence of disparate treatment of Knutson by Air-Land due to his disability or evidence of derogatory statements made by Air-Land to Knutson because of his disability.

---

[16] *See* discussion in footnote 11. Knutson's supervisor filed written warnings for Knutson's attendance problem in August and November 2014. The parties agree that Knutson was not presented with the written warnings. Air-Land asserts Knutson was verbally notified of the warnings. The written warnings contained notations that the warnings were communicated over the phone because the employee was a Cedar Falls based driver. *See* Knutson's Appendix (docket number 35) at 52. The Chief Opperating Officer and General Manager for Air-Land, Gary Christopher, testified at his deposition that it was Air-Land's practice to communicate written warnings by phone with drivers outside the company's primary terminals, such as Knutson who worked out of Cedar Falls. *See* Knutson's Appendix (docket number 35) at 52; Gary Christopher's Deposition at 19:7-14. In an affidavit, however, Knutson claims that he was never warned or disciplined regarding his attendance. *See* Knutson's Appendix (docket number 35) at 2-3; ¶ 8. The evidence in the record demonstrates that Air-Land documented Knutson's attendance issue in 2 written documents, and per company practice communicated the warnings by phone to Knutson. Other than his affidavit, Knutson offers no evidence to support his claim that Air-Land did not follow its normal practice and failed to notify him verbally of the warnings regarding his attendance. "'A properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.'" *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (quoting *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010)).

[17] *See* Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 10-11; ¶ 52.

The Court is mindful that employers are free to make employment decisions, and "courts do not sit as 'super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'" *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002) (quotation omitted). Based on the foregoing, the Court determines Knutson has failed to show Air-Land's decision to terminate his employment was pretext for intentional disability discrimination. *Cody*, 763 F.3d at 996. Therefore, because Knutson has failed to show that Air-Land's decision to terminate his employment was pretext for intentional disability discrimination, the Court concludes even if Knutson had met the requirements of his *prima facie* case, Air-Land would still be entitled to summary judgment on Knutson's intentional discrimination claims. *See Cody*, 763 F.3d at 996.

## B. ADA Claim for Failure to Accommodate

"The failure to make reasonable accommodations in the employment of a disabled employee is a separate form of prohibited discrimination" from an intentional disability discrimination claim. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004). Unlike a claim for intentional disability discrimination, the "claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive." *Id.* Instead, the claim "is framed in terms of the failure to fulfill an affirmative duty — the failure to reasonably accommodate the disabled individual's limitations." *Id.* at 767. The concern in a reasonable accommodation case is:

> compelling behavior, not policing an employer's actions that, when accompanied by an invidious discriminatory intent, are unlawful. As such, it is not the employer's discriminatory intent in taking adverse employment action against a disabled individual that matters. Rather discrimination occurs when the employer fails to abide by a legally imposed duty, we do not care if he was motivated by the disability.

*Id.* The Court will now address Knutson's reasonable accommodation claim, Count III of his Amended Complaint.

### 1. *Analytical Framework Under the ADA*

The ADA prohibits employers from:

> not making reasonable accommodations to the known physical
> or mental limitations of an otherwise qualified individual with
> a disability who is an applicant or employee, unless such
> covered entity can demonstrate that the accommodation would
> impose an undue hardship on the operation of the business of
> such covered entity. . . .

42 U.S.C. § 12112(b)(5)(A). *See also Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d
900, 902 (8th Cir. 2009). Thus, under the ADA, "an employer is required to provide
reasonable accommodations to the known physical or mental limitations of an otherwise
qualified employee with a disability, unless the requisite accommodation would impose an
undue hardship on the employer's business." *Battle v. United Parcel Service, Inc.*,
438 F.3d 856, 862 (8th Cir. 2006) (citing 42 U.S.C. § 12112(b)(5)(A)).

In reasonable accommodation cases, courts apply a modified burden-shifting
analysis. *Fenney v. Dakota, Minnesota & Eastern Railroad Co.*, 327 F.3d 707, 712 (8th
Cir. 2003). Under the modified burden-shifting approach:

> [T]he employee "must first make a facial showing that he has
> an ADA disability and that he has suffered an adverse
> employment action. Then he must make a facial showing that
> he is a 'qualified individual.'" "To be a 'qualified individual'
> within the meaning of the ADA, an employee must
> '(1) possess the requisite skill, education, experience, and
> training for his position, and (2) be able to perform the
> essential job functions, with or without reasonable
> accommodation.'" In cases where the employee claims that he
> is able to perform the essential functions of the job with
> reasonable accommodation, the employee "must only make a
> 'facial showing that a reasonable accommodation is possible.'"
> When the employee has made that facial showing "the burden
> then shifts to the employer to show that it is unable to
> accommodate the employee."

*Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008) (quotations and citations omitted). "'If the employer can show that the employee cannot perform the essential functions of the job even with reasonable accommodation, then the employee must rebut that showing with evidence of his individual capabilities.'" *Fenney*, 327 F.3d at 712 (quotation omitted). "'At that point, the employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination.'" *Id.*

Furthermore, "[w]here the employee requests accommodation, the employer must engage in an 'informal, interactive process' with the employee to identify the limitations caused by the disability and the potential reasonable accommodations to overcome those limitations." *Battle*, 438 F.3d at 862 (citing *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir. 1999)). At the summary judgment stage, the Eighth Circuit has stated "the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith." *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000). In order to show that an employer failed to participate in the interactive process, the plaintiff must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014) (quoting *Peyton*, 561 F.3d at 902). If a court concludes that the employer failed to engage in the interactive process, then "a factual question exists as to whether the employer has attempted to provide reasonable accommodation as required by the ADA." *Cravens*, 214 F.3d at 1021 (quoting *Fjellestad*, 188 F.3d at 952). However, "if no reasonable

accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process." *Battle*, 438 F.3d at 864 (citation omitted).

## 2. Discussion

In the fall of 2014, Knutson spoke with his supervisor, Kory Lawrence, regarding his heart condition and the number of hours he was required to work. Knutson informed Lawrence that his cardiologist believed he should work no more than 12 hours in one day. Lawrence told Knutson Air-Land would need a note from Knutson's doctor before considering such an accommodation. On December 3, 2014, Knutson provided Air-Land with a doctor's note indicating he should only work 11-12 hours per day. According to Knutson, when he presented the doctor's note to Air-Land, Lawrence "immediately" told him Air-Land could not accommodate his request because Air-Land was "not required" to limit a driver's work to 12 hours per day.[18] According to Air-Land, however, Lawrence responded to Knutson's accommodation request as follows: "There's no way for us to accommodate 11 to 12 hours. I can't guarantee that you will be back every day under 12 hours. I just can't do it. If I told you I could, I would be — I would be lying."[19] In further support of his failure to accommodate claim, Knutson also alleges Lawrence performed no feasability evaluation before denying his requested accommodation. Knutson concludes "[t]he failure on the part of Kory Lawrence to investigate the requested reasonable accommodation is evidence of bad faith on his part. The timing of his termination of Vance Knutson a couple of days later on December 8 is evidence that

---

[18] *See* Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 12; Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 3-4; ¶¶ 12-13. *Compare* Air-Land's Response to Plaintiff's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 39-1) at 6; ¶¶ 12-13 (denying Knutson's allegations in his statement of additional facts).

[19] Knutson's Appendix (docket number 35) at 29; Lawrence's Deposition at 164:3-7.

Lawrence did not wish to accommodate Vance Knutson or deal with his disabilities any longer."[20]

Here, the record shows that Air-Land's reason for not accommodating Knutson's 11-12 hours per day work request — Air-Land could not guarantee Knutson would only have to work 12 hours or less on a given day — is supported by the following facts: (1) Air-Land and its employees are not responsible for loading and unloading the trucks; (2) Air-Land has no control over how long the loading and unloading process will take; (3) Knutson acknowledged at his deposition that the length of a driver's trip depends in part on the time it takes for the truck to be loaded and unloaded; (4) Knutson acknowledged at his deposition it may take anywhere from 5 minutes to 2 hours for the third-party at a facility to load and unload a truck; (5) Knutson acknowledged at his deposition that Air-Land has no control over the length of time it takes for a truck to be loaded and unloaded; and (6) Air-Land also pointed out that it has no control over factors such as weather and traffic when determining the length of a driver's trip.[21] Knutson does not dispute any of these facts.[22] Furthermore, Lawrence testified at his deposition:

> Our drivers generally averaged between 11 and 12 hours a day over a period of a week, but that also means that there's usually one or two days that are 13, 14 hours, and there's some days that are only eight or nine or ten hours. It just depends on loads and volumes and bad luck, good luck and everything else in between.

Knutson's Appendix (docket number 35) at 33; Lawrence's Deposition at 184:20-185:2.

---

[20] Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 13.

[21] *See* Air-Land's Statement of Material Facts in Support of Its Motion for Summary Judgment (docket number 26-1) at 9-10; ¶¶ 71-75.

[22] *See* Knutson's Response to Defendant's Statement of Material Facts (docket number 34-3) at 4; ¶¶ 71-75 (admitting paragraphs 71-75 of Air-Land's statement of material facts).

Given these facts, the Court finds Air-Land had legitimate reasons for determining Knutson's request for an accommodation of a 12-hour workday was not possible. Multiple factors outside Air-Land's control made it impossible for Air-Land to guarantee Knutson would only work 12 hours or less every single day of a typical workweek. Therefore, the Court determines Knutson is unable to show that his requested accommodation was possible as required by his initial burden in the modified burden-shifting analysis used in failure to accommodate cases. *Brannon*, 521 F.3d at 848. Moreover, as discussed in section *V.A.2.a.* of this decision, Knutson failed to meet another hurdle in his initial burden; namely, his poor attendance record combined with his successful application for social security disability benefits, precluded a finding that he is a "qualified individual" for purposes of the ADA. *See id.* Finally, because no accommodation was available, Air-Land is "not liable for failing to engage in a good-faith interactive process." *Battle*, 438 F.3d at 864. Accordingly, the Court determines Air-Land is entitled to summary judgment on Knutson's failure to accommodate claim.

## C. FMLA Violations

In this case, Knutson alleges Air-Land violated his rights under the FMLA. Specifically, Knutson asserts "[i]f Kory Lawrence terminated [him] in order to avoid the situation posed by a second heart surgery and a second FMLA leave, in doing so, Lawrence and Air-Land would be violating the FMLA's prohibition making it unlawful for an employer to interfere with, restrain or deny the exercise of or the attempt to exercise the rights provided under the FMLA."[23] According to his brief, Knutson is claiming violations under the entitlement and discrimination theories arising under the FMLA.[24]

---

[23] Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 16.

[24] *Id.* at 15.

Air-Land responds that Knutson is not an eligible employee for purposes of the FMLA. Alternatively, Air-Land argues even if Knutson is an eligible employee, he is unable to satisfy the elements necessary for his FMLA entitlement and/or discrimination claims.

### 1. Is Knutson Eligible for FMLA Benefits

Title 29 U.S.C. § 2611(2)(B)(ii) excludes from eligibility under the FMLA "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* An employee's worksite is generally the location to which he or she reports. 29 C.F.R. § 825.111(a). However, for an employee with no fixed worksite, like a truck driver, "the worksite is the site to which they are assigned as their home base, *from which their work is assigned*, or to which they report." 29 C.F.R. § 825.111(a)(2). (emphasis added)

In his brief, Knutson correctly points out that he receives all of his assignments from the home office in Morton, Illinois, where all dispatchers provide instructions and supervision for Air-Land truck drivers. Accordingly, the Court finds that Knutson is an eligible employee for purposes of the FMLA. *See* 29 C.F.R. § 825.111(a)(2).

### 2. Applicable Law

#### a. Overview of FMLA

"The FMLA entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (citing 29 U.S.C. § 2612(a)(1)). Prohibited acts are established by two subsections of the statute. "Section 2615(a)(1) makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA." *Pulczinski*, 691 F.3d at 1005. The statute also "makes it unlawful for 'any employer to discharge or in

any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Id.* (citing 29 U.S.C. § 2615(a)(2)).

The Eighth Circuit Court of Appeals has recognized three types of claims arising under Section 2615(a)(1)-(2): (1) entitlement claims, (2) discrimination claims, and (3) retaliation claims. *Johnson v. Wheeling Machine Products*, 779 F.3d 514, 517 (8th Cir. 2015). In an entitlement claim, "an employee alleges a denial of a benefit to which he was entitled under the statute[.]" *Id.* In a discrimination claim, an employee alleges the employer discriminated against him or her because the employee exercised his or her rights under the FMLA. *Id.* Finally, in a retaliation claim, "an employee alleges that the employer took adverse action against him for opposing a practice made unlawful under the FMLA." *Id.* at 517-18; *see also Pulczinski*, 691 F.3d at 1005-1006 (providing a detailed discussion of the three types of claims arising under Section 2615(a)(1)-(2)).

### b. Entitlement Claim for Interference of FMLA Rights

"Section 2615(a)(1) makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA." *Pulczinski*, 691 F.3d at 1005. Interference includes refusing to authorize FMLA leave, discouraging an employee from using FMLA leave, and manipulation by an employer to avoid responsibilities under the FMLA. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). An interference claim only requires the employee to show "'he or she was entitled to the benefit denied.'" *Id.* (quotation omitted).

### c. FMLA Discrimination Claim

In a discrimination claim under the FMLA, "it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment." *Pulczinski*, 691 F.3d at 1006; *see also* 29 C.F.R. § 825.220(c) ("The Act's prohibition against interference prohibits an employer from discriminating . . . against an employee . . . for having exercised or attempted to exercise FMLA rights."). Absent direct evidence, an FMLA discrimination claim is analyzed

under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) burden-shifting framework. *Pulczinski*, 691 F.3d at 1007. In order to establish a *prima facie* case of FMLA discrimination, an Knutson must show "(1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Id.* (citation omitted). The Eighth Circuit has held that "an employee must prove that his exercise of FMLA rights 'played a part' in the employer's decision." *Id.* If Knutson meets his *prima facie* burden, Air-Land must articulate a legitimate, non-discriminatory reason for its action. *Wierman v. Casey's General Stores*, 638 F.3d 984, 999 (8th Cir. 2011). If Air-Land meets its burden, Knutson must identify evidence that Air-Land's proffered reason was pretext for unlawful discrimination. *Id.*

### 3. Discussion

#### a. Entitlement Claim for Interference

There is no evidence Air-Land refused to authorize FMLA leave for Knutson (in fact Air-Land granted Knutson FMLA leave in December 2013), or discouraged him from using FMLA leave. The Court assumes Knutson is arguing Air-Land manipulated the situation by terminating him in order to avoid responsibilities under the FMLA; *i.e.*, Knutson's potential need of a second 12-week FMLA leave in March 2015. In order to prevail on an interference claim, Knutson must show he was entitled to the benefit denied. *Stallings*, 447 F.3d at 1050.

Knutson cannot show he was denied any FMLA benefit. First, even though Knutson told Air-Land that he believed he may need FMLA leave again in the future, there is no medical evidence in the record suggesting further heart surgery was required. Instead, Knutson's medical provider indicated if tests showed a worsening of symptoms, he may consider further heart surgery at that time.[25] Second, at the time he was terminated

---

[25] *See* Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for
(continued...)

from employment in December 2014, Knutson had already used his 12-weeks of FMLA leave, and would not have an additional 12-weeks of leave until March 2015. Third, Air-Land had a legitimate reason for terminating Knutson — poor attendance. Under the circumstances, the Court concludes Knutson has failed to make an entitlement claim for interference with his FMLA rights. Accordingly, Air-Land is entitled to summary judgment on this issue.

### b.    Discrimination Claim

In order to prevail on his *prima facie* case of FMLA discrimination, Knutson must show, among other things, a causal connection existed between Knutson's potential need for future FMLA leave and termination of his employment by Air-Land (third prong of his *prima facie* case). *Pulczinski*, 691 F.3d at 1007. Having reviewed the entire record, the Court is unpersuaded Knutson can show a causal connection between his potential need for future FMLA and Air-Land's termination of his employment. First, Knutson offers no evidence and presents little argument in his brief to support his claim.[26] Second, the record does not support his alleged need for a second heart surgery requiring a second FMLA leave. There is no medical evidence in the record suggesting further heart surgery was required. Instead, Knutson's medical provider indicated if tests showed a worsening of symptoms, he may consider further heart surgery at that time.[27] Third, Air-Land had a legitimate reason for terminating Knutson which had nothing to do with his potential future exercise of FMLA leave — poor attendance. Under the circumstances, the Court

---

[25](...continued)
Summary Judgment (docket number 34-2) at 10-11; ¶ 52.

[26] *See* Knutson's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 34-1) at 15-16.

[27] *See* Knutson's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 34-2) at 10-11; ¶ 52.

concludes Knutson has failed to make a *prima facie* case for his FMLA discrimination claim. Accordingly, Air-Land is entitled to summary judgment on this issue.

## *VI. CONCLUSION*

The Court concludes that Defendant Air-Land Transport Service, Inc. is entitled to summary judgment on all of Knutson's claims.

## *VII. ORDER*

### IT IS THEREFORE ORDERED AS FOLLOWS:

1. The Motion for Summary Judgment (docket number 26) filed by Defendant is **GRANTED**.

2. The Amended Complaint (docket number 24) filed by Plaintiff is **DISMISSED**.

3. This case is **CLOSED**.

DATED this _6th_ day of September, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA